# THE STATE ex rel. PABST BREWING COMPANY v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals.

### In Banc, December 31, 1921.

1. **QUESTION OF FACT: Jury Trial: Peremptory Instruction: Conflict in Opinions.** When the evidence of fact is uncontradicted it is nevertheless for the jury to say whether or not they will believe it, and the trial court is not justified, under such circumstances, in peremptorily instructing them to find in favor of either party; and the Court of Appeals, in ruling that where the evidence of a dis-puted fact is uncontradicted the trial court is justified in directing a verdict for defendant, contravened the ruling in Gannon v. La-clede Gas Co., 145 Mo. 502, 1. c. 513, and other decisions.

2. ———: ———: ———: ———: **Shipment of Beverages.** A brewing company delivered to a railroad company, for shipment into Ari-zona, where the shipment of beer and intoxicants was proscribed, half-barrels which had pasted over the bung-holes a revenue stamp on which the word "Beer" was printed. The railroad company is-sued a bill of lading which stated that it had received half-barrels of "Pablo" for transportation; that the contents and condition of the contents were unknown, and that the shipment was "170 half-barrels of Pablo, unfermented non-alcoholic beverages." Chem-ical experts, employed for the purpose, ascertained that the ves-sels contained a liquid which "looked, foamed and smelled like beer." The Court of Appeals ruled that the brewing company shipped the liquid in such manner as, connected with its appearance, deceived the railroad company and justified it in refusing to carry it into Arizona, and that the trial court should have directed a verdict for the defendant railroad. *Held*, that, in view of this evi-dence, the court could not decide that the vessels contained a liquid whose shipment was forbidden by law, but the question whether the liquid was of that character, and whether the carrier was reasonably justified in believing it was of that character, were questions for the jury to decide; and the Court of Appeals, in deciding that the trial court should have directed a verdict for the defendant railroad company, in a suit for damages for refusing said shipment, contravened previous decisions of the Supreme Court.

286 Mo.—15

## Certiorari.

RECORD QUASHED.

*I. J. Ringolsky, M. L. Friedman, Ringolsky & Friedman* and *Wm. G. Boatright* for relator.

(1) A prima-facie case is made when a delivery of goods to a carrier is shown and a subsequent loss thereof. Steamboat Missouri v. Webb, 9 Mo. 192; Levering v. Trans. & Ins. Co., 42 Mo. 88; Reed v. Ry. Co., 60 Mo. 199; Davis v. Railroad, 89 Mo. 340. (2) When a party to a controversy submits evidence to sustain his burden of proof, the other party is entitled to have the case go to the jury, although nothing contradictory be offered. Gannon v. Gas Co., 145 Mo. 502; Hunt v. Wethington, 205 Mo. 284; Prince v. Miller, 233 Mo. 47; Laughlin v. Kansas City Southern, 205 S. W. 5.

*Watson, Gage & Ess* and *Fred S. Hudson* for respondents.

(1) There was no question of fact to be found by a jury. There was no dispute and could be none as to the appearance presented by this shipment. This appearance of the shipment was given by relator in the way and manner it was shipped and stamped with internal revenue stamps showing it was spirituous liquors. The respondents held as a matter of law the carrier had the right to infer this shipment was just what relator had labeled it, to-wit, "beer," and was justified as a matter of law in refusing to carry the same into prohibition territory. The question is, was the Court of Appeals right in holding as a matter of law that relator was not entitled to recover under its own testimony, which was undisputed? Relator's own evidence showed prima-facie that the shipment was in violation of the laws of Arizona, and the carrier prima-facie would

have been guilty of violating the laws of Arizona in carrying it to destination. A carrier cannot be compelled to carry a shipment of liquors into the State of Arizona. United States ex rel. v. Railroad Co., 210 Fed. 378; Distilling Co. v. Railroad Co., 219 Fed. 333; Brewing Co. v. Railroad Co., 225 Fed. 753; Commonwealth v. Harper, 145 Mass. 100. (2) The Southern Pacific Company was justified under relator's evidence in inferring this shipment was beer, and it was prohibited from carrying it unto Arizona. Malt Extract Co. v. Railroad Co., 73 Iowa, 98, 34 N. W. 761; Express Co. v. Commonwealth, 33 Ky. L. R. 967, 112 S. W. 577; Nitro-Glycerine Case, 15 Wall. (U. S.) 536; Hutchinson On Carriers (3 Ed.), sec. 796; Clark v. Railroad Company, 179 Mo. 94; Commonwealth v. Mixer, 207 Mass. 141. (3) The rule laid down in the cases relied upon by the relator that it made a prima-facie case by showing a delivery of goods to the carrier and a failure to deliver at point of destination, does not apply to a shipment of goods where it is claimed it is unlawful to deliver such goods as intoxicating liquors, dangerous explosives or dangerous chemicals. In such cases the carrier become liable to a criminal prosecution, if it carries the prohibited goods into prohibited territory, and must act upon the facts and appearances, and if there are reasonable grounds for suspicions, it may refuse to carry such goods, until satisfied they are not in the class prohibited by law. Malt Extract Co. v. Railroad Co., 73 Iowa, 98, 34 N. W. 761; Express Co. v. Commonwealth, 33 Ky. L. R. 967, 112 S. W. 577; Nitro-Glycerine Case, 15 Wall. (U. S.) 536; Clark v. Railroad Co., 179 Mo. 94. (4) There was no question of fact to be submitted to the jury to find why this shipment was not delivered. The question was decided by the Court of Appeals, as a matter of law, upon relator's own evidence showing the way and manner this shipment was made by it and the use by relator of United States internal revenue stamps upon

each beer keg, and the undisputed fact that relator printed upon each stamped the word "beer," that it was not entitled to recover, and that the carrier had a right to infer, and it was charged as a matter of law with such facts as to apprise it, that said shipment was spirituous liquors, which were prohibited by the laws of Arizona. If the Court of Appeals did err, it was an error of law which is not in conflict with any decision of this court on that particular point, and this court has no jurisdiction to review the decision.

WILLIAMSON, J.—This is a *certiorari* case, in which we are asked to quash the record of the Kansas City Court of Appeals in the suit of the Pabst Brewing Company against the Chicago, Milwaukee & St. Paul Railway Company, hereinafter called the Milwaukee, and the Southern Railway Company, hereinafter called the Southern.

The facts revealed by the opinion of the respondents are few and simple.

The Pabst Brewing Company desired to ship 170 half-barrels of a beverage called "Pablo," from Milwaukee, Wisconsin, to Globe, Arizona, and for that purpose delivered this shipment to the Milwaukee, as the initial carrier, which, in turn, delivered it to the Southern.

The Brewing Company had long been engaged in brewing beer and the beverage in question was shipped in half-barrels, of a kind commonly used for the shipment of beer. Each half-barrel had pasted over the bung-hole an internal revenue stamp such as was required by the United States Government to be placed upon beer so shipped, and each of these stamps bore printed upon its face the word "Beer."

At the time the Milwaukee received this shipment for transportation it issued to the Brewing Company a bill of lading in the usual form, which specified among other things, that the Milwaukee had received from the

Brewing Company 170 half-barrels of "Pablo" for transportation to Globe, Arizona; that the contents and condition of the contents of these half-barrels were unknown, and the further statement that the shipment in question was "170 half-barrels of Pablo, unfermented, nonalcholic beverages." The goods in question were duly delivered by the Milwaukee to the Southern, and by the latter carrier were transported to Lordsburg, New Mexico. At that time prohibition obtained in Arizona in its most arid form, and beer and all manner of intoxicants were prescribed by constitutional provision, legislative enactment, and judicial decision. At Lordsburg, which was the last station before reaching Arizona, the Southern opened the car containing this shipment and made an examination of the contents of several of these half-barrels. The "chemical experts" employed for that purpose ascertained that the vessels in question contained a liquid which "looked, foamed and smelled like beer." (As to taste, the record is dark.) Thereupon the Southern declined further to transport these goods, notified the Brewing Company of that fact and of its reason for so refusing, namely the law aforesaid, and desired to be informed what disposition the Brewing Company would make of the shipment. It was finally agreed, without prejudice as to any legal rights of the parties, that the Southern should empty the contents, which had spoiled by reason of the delay, and return the containers to the Brewing Company, which was done. Thereupon the Brewing Company sued the two railway companies for damages for the loss of the beverages thus destroyed.

At the trial a verdict was rendered in behalf of the defendants. The trial court granted a new trial, and the defendants appealed to the Kansas City Court of Appeals. The latter tribunal remanded the cause with directions to the trial court to set aside the order granting a new trial and to enter judgment upon the verdict for the defendants.

Relator contends that the decision of the Kansas City Court of Appeals is in conflict with various con-

trolling decisions of this court upon the ground that the facts stated made out a prima-facie case in behalf of relator, which it was entitled to have submitted to a jury, whereas, respondents in their opinion hold that the trial court should peremptorily have instructed the jury to find for defendants.

Conflict.

Pertinent portions of the Court of Appeals' opinion are as follows:

"We recognize that in all instances involving the constitution of a state, as it relates to the domestic policy of such state, we should follow the construction given to that instrument by the courts of that state.

"On that basis there is a question in the case which may be divided into two parts: first, whether the liquid called 'Pablo' was beer without regard to whether it contained alcohol in intoxicating quantities; and, second, if it was not beer, was it so shipped by plaintiff as to deceive the defendant Southern Pacific Railway Company into the belief that it was beer, and thereby justify such company in refusing to take it into the State of Arizona.

"As to the first, plaintiff insists that the evidence showed the liquid called 'Pablo,' is an unfermented nonintoxicating carbonated beverage, manufactured by an entirely different process from that used in making beer. That to make beer it must go through fermentation and be made from malt.

"On the other hand, defendant claims that the evidence showed plaintiff had maintained a large brewery and had made beer with intoxicating alcoholic properties for perhaps seventy-five years and that only in the last three or four years had it produced what it now called 'Pablo.' It was shown that Pablo had the color, foam and smell of beer, and that it was made in plaintiff's brewery by much the same process except it did not contain alcohol or malt.

"We need not pursue the first branch of the subject further than to say that the state of the evidence

was such as to make a jury question whether 'Pablo' was beer as defined by the Supreme Court of Arizona, or was it an unfermented, non-intoxicating carbonated beverage made without the ingredients which distinguish beer.

"But as to the second branch of the question, we think it so clearly established that plaintiff shipped the liquid in such manner, as, connected with its appearance, deceived defendants and justified the Southern Pacific Company in refusing to carry it into the State of Arizona, that the trial court should have directed a verdict for them. In this connection plaintiff makes claim of facts which the record does not justify, in that it states that defendant, the Milwaukee Railroad, received the liquid knowing that it was not beer, but was 'Pablo,' a non-intoxicating liquor, and agreed to transport it. The fact was to the contrary. . . .

"Plaintiff also undertakes to avoid the condition in the bill of lading that the contents of the car was unknown, by the claim that there was stamped on the bill that the shipment was '170 half-barrels of Pablo, unfermented, non-alcoholic carbonated beverages.' But the meaning of the two statements evidently is that plaintiff stated that the shipment was a non-alcoholic beverage, while the carrier, in effect, refused to accept such statement and itself stated that the contents were unknown. The sum of it all being that here was a shipment which the shipper declared was a lawful one, but which turned out, to every appearance, to be unlawful.

"We are satisfied that these facts, established as they are, either by concession of plaintiff, or by undisputed and unquestioned evidence, justified the refusal to carry the car into the State of Arizona. A carrier acting in good faith is not bound to know the contents of packages or sealed cars delivered to him for transportation; nor is he bound to carry articles forbidden by law to be transported, and if in the course of trans-

portation he discovers he is carrying forbidden freight he may refuse to carry further. And in exercising this right and duty he may judge by appearances made by the shipper, such as would address themselves to the mind of any reasonable person.''

No allusion is made in the opinion to any pleadings or instructions, nor does the opinion state upon what ground the trial court granted a new trial. The opinion states, it will be observed, that the Milwaukee did not know the contents of these half-barrels, and also states that the Brewing Company undertakes to avoid a statement in the bill of lading to that effect ''by the claim that there was stamped on the bill that the shipment was '170 half-barrels of Pablo, unfermented, non-alcoholic, carbonated beverages,' '' and, indeed, we think it a fair inference from the opinion itself that such a clause was in that document. That this clause was put in the bill of lading at the instance of relator is also admitted. That this statement is in conflict with the other statement in the bill with reference to these half-barrels, to the effect that the contents and condition of contents were unknown to the defendants, is obvious. One statement fully describes the contents and the other states that they were unknown. It is thus apparent that the defendants at least had knowledge of the claim on the part of the Brewing Company that this beverage was unfermented and non-intoxicating. Under these circumstances, the respondents in their opinion declare that the trial court should have directed a verdict for the defendants.

Now we have held in many instances that even when the evidence upon a question of fact is uncontradicted, it is nevertheless for the jury to say whether or not the jury will believe the evidence, and that, for that reason, the trial court is not justified, under such circumstances, in peremptory instructing the jury to find in favor of either party. In other words, the judge has no, right to tell the jury that it shall or shall not believe certain evidence.

An old and oft-cited case on this point is Gannon v. Laclede Gas Co., 145 Mo. 502, l. c. 513, where this question is thoroughly discussed. This case has been uniformly followed ever since, Hunter v. Wethington, 205 Mo. 284; Pritz v. Miller, 233 Mo. 47, and Laughlin v. Kansas City Southern, 205 S. W. 3; St. Louis Trust Co. v. Hill, 223 S. W. 434.]

Indeed, respondents do not contend that the rule is otherwise. There was no prohibition against the transportation of unfermented, non-alcoholic intoxicants, and the contention, therefore, resolves itself into this: that a common carrier is justified in refusing to transport a lawful shipment because of the existence of a law making certain other shipments unlawful, simply for the reason that the shipment in question resembles an unlawful shipment. The prohibition in the instant case was leveled at the fact, not at the appearance. We suppose (without deciding) that, at the utmost, the rule could not be stated more favorably to the carrier than to say that it would be justified in refusing to transport a shipment when, in the exercise of reasonable care, it, in good faith, believed the shipment in question to be of an unlawful character. Whether or not the carrier did so believe, in a specific instance, and whether or not, in that instance, it was reasonably justified in so believing, would be questions of fact for the decision of the jury.

But in the case at bar, respondents hold that it was the duty of the trial court peremptorily to instruct the jury to find for the defendants, for the reason that, as respondents say in their opinion, "*We think* it is clearly established that plaintiff shipped the liquid in such a manner as, connected with its appearance, deceived defendants." This is merely saying that the trial judge should have decided a question of fact, instead of submitting it to the jury, and the opinion is therefore in conflict with the decisions above cited. Respondents' opinion concedes that the question as to

whether or not this beverage was beer, within the meaning of the Arizona law, was a question for the jury. Hence we do not discuss that phase of the case.

For the reasons stated, the record of the Kansas City Court of Appeals in the case of Pabst Brewing Company v. Chicago, Milwaukee & St. Paul Railway Company et al. should be quashed.

It is so ordered.  All concur.